# Richmond

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,
ETC. V. FRED BRIDGEMAN.

February 26, 1940.

Record No. 2166.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and
Browning, JJ.

The opinion states the case.

*James E. Heath* and *Alan J. Hofheimer,* for the plaintiffs in error.

*Tom E. Gilman* and *James G. Martin & Son,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This is an attachment proceeding instituted by Fred Bridgeman against the International Brotherhood of Electrical Workers and its officers, and Local Union No. 732 of the Brotherhood and its officers. Plaintiff alleged that the Brotherhood was due him $504 on account of pension benefits at $40 per month from September, 1937. The trial court entered judgment on the verdict for the sum named in the petition. To that judgment this writ of error was granted on the prayer of defendants in the trial court.

Defendants' main contention is that the trial court erred in refusing to set the verdict aside on the ground that the evidence was insufficient to support it.

The pertinent parts of sections 2 and 6, article 12 of the constitution of the International Brotherhood of Electrical Workers, read as follows: "Any male member, * * *, attaining the age of 65 years, and who has been a member of the I. B. E. W. (International Brotherhood of Electrical Workers) *in continuous good standing for 20 years* immediately preceding his application, shall be eligible for Pension Benefits. (Italics supplied.)

"Sixth—The I. S. (International Secretary) shall, for each member admitted to Pension Benefits, authorize disbursement of $42 a month, $2 of which shall be paid to the I. O. (International Office) for the member's *per capita,* and the balance of $40 sent to the member."

It is conceded that plaintiff has been a member of this organization since May, 1916, and at the time of trial was 73 years of age; that he had always paid his dues; that he was not and never had been indebted to the union; and that, before the institution of this suit, his application for pen-

sion benefits, made through the secretary of the local union as provided by other sections of the constitution, had been rejected.

Defendants concede the above facts but contend that plaintiff is not entitled to a pension at this time because he failed to pay his dues for April, May and June, 1921, until August 15, 1921; and that this delay in payment of dues automatically suspended him from pension benefits under provisions of sections 1, 3 and 5 of article 24 of the constitution. These sections are as follows:

"Sec. 1. No member is entitled to notice of the monthly or quarterly dues of his local union, nor of arrearages, but must take notice when payments are due.

"Sec. 3. Any member indebted to his local union for 3 months' dues—or having any past due indebtedness to the I. B. E. W. for dues or assessments—shall stand suspended, and the local union may refuse to accept dues from any member that is indebted to it. Such member cannot be reinstated until all indebtedness has been paid unless remitted by the local union. However, dues cannot be remitted.

"Sec. 5. Members in arrears forfeit all rights and previous standing in the I. B. E. W.—and *if reinstated,* their standing benefits *shall date only from time* of their reinstatement, but they shall retain their former card number." (Italics supplied.)

The only evidence offered by defendants, tending to prove that plaintiff had been suspended for violating the pertinent provisions of the constitution, was an official local union receipt for the sum of $4.80 earmarked as plaintiff's dues for April, May and June, 1921, and bearing date August 15, 1921.

To meet and overcome the effect of this receipt plaintiff introduced evidence, the synopsis of which is stated below. In June, July and August, 1921, he was chairman of a general committee designated to do special work for the union under an agreement to be paid for the services performed and to be reimbursed in part at least for the expenses incurred. In addition, the union agreed that its local

secretary should keep plaintiff in good standing with the International office until final settlement was made with him for the services rendered and expenses advanced. The record of the local union shows the following financial transactions between it and plaintiff: In April, 1921, it paid plaintiff $75 for expenses to Chicago; in June, 1921, it paid him $80.50 and acknowledged its indebtedness to him in the sum of $117.45, leaving $36.95 balance due him as of that date; in July, 1921, he was allowed and paid $75 on account; and in August, 1921, a final settlement was made between the parties, at which time plaintiff was given an official receipt for $4.80 for the dues in question.

Section 8, article 19, of the constitution provides that "no L. U. shall allow dues to officers or appointees for services rendered—but the L. U. may fix such salaries for them as it decides."

H. J. Kraemer, president of the local union, testified that the local received dues from members and issued receipts to them therefor, and that a part of the dues of each member was forwarded by the local to the International office "to conduct the business of the organization, and at that time we had a funeral benefit fund and a part of the *per capita* fund went to the funeral benefit fund, and had an advance fund and several other things this money went for."

It further appears from this official's testimony that, in order for a suspended member to be reinstated, it is necessary that such member pay all dues in arrears and all debts owing to the local, a reinstatement fee of $3, and a pension benefit fee of $10. When these conditions are performed, the 20-year period for the continuous good standing begins from the date of reinstatement.

Plaintiff did not construe the failure of the secretary of the local union to remit promptly to the International office that *per capita* part of the $1.60 monthly payments due it, as a suspension of any of his rights as a member of the union.

The local branch could not, and did not attempt to, claim that its failure to send promptly this small *per capita* sum

to the home office had the effect of suspending any of plaintiff's rights. While the union claims that under its constitution no local could accept services in payment of dues, the constitution does not prohibit the local from making a valid contract to allow such offset when the debt due by it to a member arises from any other transaction. However, it is not necessary to base the decision on this strict interpretation of section 8, article XIX, of the constitution, as a fair and liberal construction of all pertinent provisions of the constitution, stated below, leads to the same conclusion.

The pertinent provisions of the constitution clearly contemplate that a part of the *per capita* monthly dues paid by each and every member to a branch of the union shall be by that branch sent to the home office for the purpose of purchasing a pension. This pension is payable when a member has been "in continuous good standing for a period of 20 years and has reached the age of 65." In order to secure the prompt and continuous payment of these *per capita* sums, which must be used for pensions, the constitution provides that the failure to pay them within the stated time shall operate as a suspension of the member from pension benefits. In order for a suspended member to be reinstated, it is incumbent upon him to pay (1) all debts and obligations due by him to the union, (2) a reinstatement fee of $3, and (3) a pension benefit fee of $10. When a member is suspended and these conditions are performed, his potential right to a pension begins from the date of his reinstatement.

In this case no party to the agreement—the plaintiff, the local or the union—construed the transaction between plaintiff and the local in 1921 as a suspension. The officers of the International union, officers of the local union and plaintiff testified that plaintiff was a member in good standing, which he could not have been if he had been suspended, and had never been reinstated. Plaintiff made no request for reinstatement. He was not required to, and did not pay the reinstatement and pension benefit fees; however, he continued to pay and the union continued to accept his *per capita* monthly pension dues.

After introducing evidence tending to establish the facts outlined above, both sides requested the trial court to submit the case to the jury on one instruction, reading: "The court instructs the jury that if you believe from the evidence that Mr. Bridgeman has attained the age of 65 years, and has been a member of the International Brotherhood of Electrical Workers in continuous good standing for 20 years immediately preceding the institution of this suit, you should find for him for an amount as proved by the evidence." Guided by this instruction, the jury found, as it had a right to find from the evidence, that the Brotherhood was estopped from defending the action on the ground that plaintiff had been suspended within twenty years immediately preceding the date of his application for pension benefits.

The judgment of the trial court is

*Affirmed.*