# Richmond

## International Brotherhood of Electrical Workers, et als. v. Fred Bridgeman.

April 13, 1942.

Record No. 2511.

Present, All the Justices.

534

The opinion states the case.

*William G. Maupin, Alan J. Hofheimer* and *Isaac Lobe Straus*, for the plaintiffs in error.

*Tom E. Gilman* and *James G. Martin & Son*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

This case has resulted from the former case of *International Brotherhood of Electrical Workers* v. *Bridgeman*, which is reported in 175 Va. 99, 7 S. E. (2d) 104. The opinion in the former case definitely and conclusively established the right of Bridgeman to a pension to be paid at the rate of $40 per month by the International Brotherhood. The judgment of this court in that case became final, and the subject matter of that action, to-wit, the right of Bridgeman to the pension, was forever put at rest.

Since then the International Brotherhood, which will be referred to as the union, has failed to make the monthly payments of pension benefits to Bridgeman, and there was due Bridgeman $956 at the time of the present or second action.

. The present proceeding, like the former one, arises by attachment. Certain funds were attached to enforce the payment of the amount alleged to be due Bridgeman.

The facts upon which the former case was decided were clearly stated by Mr. Justice Hudgins who spoke for the court. 175 Va. 99, 7 S. E. (2d) 104. They will not be restated here. Since then D. W. Tracy, International President of the Brotherhood, wrote Bridgeman a letter. It was of May 28, 1940, and in it Bridgeman was charged with a violation of article 28, section 1, of the constitution of the order, in that he had resorted to a court of law on September 28, 1938, by instituting the former action without having first exhausted his remedies within the order. The letter notified Bridgeman to appear before Mr. Tracy, the president, for trial upon the charge.

Bridgeman replied to this letter and denied that Mr. Tracy had jurisdiction to try him. Later, Mr. Tracy notified Bridgeman that he would try the charges on June 19, 1940, to which Bridgeman made no reply. On that day the trial was held by Mr. Tracy. Testimony and other evidence were presented and considered, and Bridgeman was found guilty, as charged, of violating article 28, section 1, of the constitution and expelled from the union effective as of the 17th of June, 1940. Bridgeman did not reply to the letter sent him by Mr. Tracy in which notice was given of the result of the

trial. He did not appeal from the order of expulsion. On June 25, 1940, he sent the International Secretary $6 for the payment of his dues for April, May and June of 1940. This payment was refused, and the money returned to Bridgeman. However, he had paid, and the union had accepted, his monthly dues from September, 1938, the time the first action was instituted, to April 1940, a period of eighteen months.

Bridgeman being unable to collect his monthly pension, which amounted to $956 on August 28, 1940, instituted the present petition for an attachment against the union to enforce payment of the amount due. Before instituting this second proceeding he did not exhaust his remedies within the union, which were provided for in the constitution.

The union moved to quash the attachment, but the motion was overruled. Bridgeman filed a bill of particulars in which he claimed that his right to the pension had been decided in his favor in the first proceeding and was now *res adjudicata*. The union filed its ground of defense, setting out that the expulsion of Bridgeman from the union ended all of his rights to the pension; and further that this present action by Bridgeman was prematurely instituted because he had not first exhausted his remedies within the union as was required by the constitution as a condition precedent to the right of a member to resort to a court for redress.

The case was tried by the court without the intervention of a jury, and judgment was entered for the petitioner Bridgeman for the full amount claimed by him. The trial court delivered this brief and clear opinion:

"The Supreme Court has held that the plaintiff is entitled to the pension; that matter is *res adjudicata*, and the defense now attempted to be interposed to this action is a defense that could and should have been made in the former suit, hence is too late. The attempted expulsion of the plaintiff by the President of the defendant is void. None of the sections of the by-laws or constitution give him that power in this case and the only way he can now be suspended or expelled would be in accordance with section five, Article 12, p. 13, of the Constitution. The judgment of the Court is that the

plaintiff recover of the defendant $40.00 for each month the defendant has refused to pay the pension up to the time this suit was brought, with interest from the end of each month, and with interest on $2.00 from the end of each month up to the time the plaintiff paid the same."

The union, through its counsel, moved to quash the attachment upon the ground that the petitioner had not complied with Code, section 6379, in that he failed to allege the required ground for attachment, to-wit: that the principal defendant is a non-resident of Virginia and "has estate or debts owing to said defendant within the county or city in which the attachment is * * *."

The ground of attachment stated in the petition is as follows:

"Petitioner further alleges that said principal defendant is a non-resident of the State of Virginia, being resident of, and doing business in the City of Washington, in the District of Columbia, and is entitled to certain personal property and sums of money in the State of Virginia.

"Wherefore petitioner prays and asks for an attachment against the estate, real and personal of said principal defendant in the State of Virginia, and more particularly against the personal property, and sums of money of said principal defendant now in the possession of and under the control of the following named Co-defendants, to-wit:

"Local Union Number 732, International Brotherhood of Electrical Workers, and H. L. Fletcher, its financial secretary, 918 North Street, Portsmouth City."

[■] The motion to quash was overruled by the trial court. This action in our opinion was correct. The allegation referred to measured up to the requirements of section 6379. The attachment disclosed that the principal defendant had sums of money in the possession of a co-defendant "Local Union Number 732, International Brotherhood of Electrical Workers, and H. L. Fletcher, its financial secretary, 918 North Street, Portsmouth City", and then followed a listing of other co-defendants and the statement that "said co-defendants are indebted to said principal defendant * * *". The

allegation is sufficient as such to show that there is a debt due the principal defendant by a co-defendant in the city of Portsmouth "the city in which the attachment is." In that city the attachment was instituted.

*Winfree* v. *Mann*, 154 Va. 683, 153 S. E. 837, is unlike the case at bar. There the attachment was instituted in Lynchburg, Virginia, while according to the allegation the property sought to be attached was in Tazewell county, Virginia. There being no allegation that the principal defendant had estate or debts due him in Lynchburg, the city in which the attachment was instituted, the decision of the trial court quashing the attachment was affirmed.

We are of the opinion that the motion to quash the attachment was without merit.

The next point made in the assignments is that the trial court erred in holding that the issue now sought to be raised was *res adjudicata* by reason of the opinion and judgment in the previous case. (175 Va. 99, 7 S. E. (2d) 104.)

It is now argued by counsel for the union that the sole issue decided in the first case was that Bridgeman was a member of the union and in good standing in September, 1938, and as a result of that membership he was entitled to a monthly pension up to that time, while in the present case it is claimed that a new and subsequent defense has arisen which was not and could not have been litigated in the former case. The argument follows that new issues arising subsequently were not concluded by the former judgment.

Counsel for the union insist that Bridgeman should have exhausted his remedies in the organization in accordance with the constitution as a condition precedent to bringing the first action, and as a result of his failure to do so before taking his case to the court he violated article 28, section 1, which provides that "any member violating his obligation and resorting to a court of law for redress for any injustice he may believe has been done him by the I. B. E. W. (International Brotherhood of Electrical Workers) or any of its Local Unions—until he has first exhausted all his remedies

through all the courts within the I. B. E. W.—shall stand automatically expelled without rights of any kind."

This defense is one which properly could have been interposed in the first action, and the failure of the union to interpose it in that action estops it to use it as a defense in the present or second action. The general rule in Virginia is that a defendant is required to bring forward his whole case in the first litigation, and if he fails to do so a plea of *res adjudicata* filed in a subsequent suit between the same parties involving the same subject matter will estop him and prevent the setting up of a defense in the second action which could and should have been pleaded in the first action. The rule is clearly stated in *Kemp* v. *Miller*, 166 Va. 661, 186 S. E. 99. In that case, however, the plea was rejected because the second suit was upon a different cause of action. See also, *McDaniel* v. *McDaniel*, 175 Va. 402, 9 S. E. (2d) 360.

Appellants rely upon *Brunner* v. *Cook*, 134 Va. 266, 114 S. E. 650, but a casual reading of the opinion will disclose that nothing is said there which militates against the rule above stated. In the *Brunner case* the case of *Cromwell* v. *County of Sac*, 94 U. S. (4 Otto) 351, 24 L. Ed. 195, is referred to and portions of the opinion quoted extensively. A reference to the opinion in the *Cromwell case* will disclose that the court drew a distinction between a case where the second action was upon the same claim or demand as the prior action and a case where the second action was upon a different cause of action. In the former case it was held that the judgment constituted a bar to a subsequent action concluding the parties and their privies not only as to every matter which was litigated in the first action but also as to any other matter which might have been litigated. In the latter case, where the action was upon a different cause of action, the judgment in the prior action operated as an estoppel only as to those matters which were in issue and actually litigated. The case at bar falls within the former class of cases, for the subject matter of both actions involved here was the same, and hence the principle of *res adjudicata* applies.

■ In the first action the union submitted its case to a court of law. It made no objection to the determination by the court of the right of Bridgeman to a pension. There it failed or refused to invoke the provisions of article 28, section 1, though it had the right to do so. Not until some eighteen months afterward did the union attempt to invoke article 28, and then after Bridgeman had paid his dues for those eighteen months, and the union had accepted them without any reservation whatever. Under such circumstances the union waived the right to rely upon the performance of the provisions of article 28 by Bridgeman as a condition precedent to his right to bring the prior action.

The judgment in the former action impliedly freed Bridgeman of any prior conduct that was cause for his expulsion. He could not be denied his pension for conduct the court has inferentially approved in the first action. To allow this would in effect permit the union to escape the consequences of a final judgment of a court of competent jurisdiction.

The alleged expulsion of Bridgeman on June 19, 1940, by Mr. Tracy, the International President, was founded upon the charge that he had first resorted to a court of law for redress in September, 1938, without pursuing the remedies provided by the constitution within the organization, and therefore under article 28, section 1, he was expelled as a member of the union and any rights he had, including his right to the pension, were ended.

Some twenty-one months intervened between the inception of the first action and Bridgeman's expulsion. As already indicated, he had paid his dues to the union and they had been accepted for eighteen months after the first action was begun. During all of that time, no effort was made by the union to enforce the provisions of article 28, section 1.

■ The very basis for the expulsion was a matter which could have been made a defense in the first action. The claimed dereliction of Bridgeman in first resorting to a court of law was a matter in existence before the beginning of the prior suit and as we have already indicated, should have been litigated in that action. After the final judgment in the prior

action determined Bridgeman's right to a pension, no subsequent conduct on the part of the union could defeat the legal effect of that judgment.

It is argued that the present action was prematurely brought because Bridgeman, after the judgment in the prior suit, did not exhaust his remedies within the union before instituting the second action.

The cause of action in the first proceeding, as previously stated, was the determination of Bridgeman's right to a pension. The judgment there determined this right in his favor. He was adjudged to be entitled to a monthly pension of $40 per month to be paid by the union. The purpose of the second action was not again to adjudicate his right to the pension, for this had already been done in the first suit. The second action was for one purpose only, viz: to enforce the collection of the monthly pension. It did not involve any controversy to be settled in the union. Controversies to be settled within the order were matters referable to the prior action where the primary question was involved.

Besides, the law would not require Bridgeman to do such a vain and futile thing as to apply for the settlement of his right within the order when he had already been notified of his expulsion. If he had applied to the union for his pension, no doubt he would have been met with the order of expulsion and the assertion that his right to the pension had thereby terminated. The purpose of the expulsion was to cut him from the pension roll. No other purpose is evident, therefore any appeal he might have made to the union was obviously doomed and superfluous.

The unqualified expulsion of Bridgeman from the union, whether valid or invalid, was tantamount to a denial by the union of his claim to pension benefits which could under the constitution be paid only to members in good standing.

A minor point in the case involves the validity of the expulsion. The right of Mr. Tracy, the president, to expel Bridgeman is challenged. He asserts that Mr. Tracy had no jurisdiction to conduct the trial, and therefore his decision of expulsion was void. When notified of the trial before Mr.

Tracy, Bridgeman promptly notified him of his lack of jurisdiction to conduct the trial.

Under article 12 of the constitution is found the union law which controls the subject of pensions. It sets forth the conditions under which a member may be entitled to a monthly pension of $40. It provides that a member admitted to pension benefits (section 3) "shall observe his obligation of membership and show due obedience to I. B. E. W. (International Brotherhood of Electrical Workers) laws and the by-laws of its L. U.'s" (Local Unions), and section 5 of this article provides that "any member violating any of the provisions of this Article * * * after investigation by the I. E. C. (International Executive Committee) and being found guilty, shall be permanently barred from ever participating in these Benefits, and may be suspended, expelled or assessed as the I. E. C. may decide."

The duties of the International Executive Committee are defined in article 9 of the constitution, and among them, in section 4, is conferred the power to try "any Local Union or member charged with injuring the interests of the I. B. E. W. by actions in violation of I. B. E. W. laws or the obligation of the member, and may revoke or suspend charter or membership."

And in article 28, section 3, we find that "All charges—except against officers * * * — shall be heard and tried by the Local Union Executive Board which shall act as the Trial Board * * *". The power to try members was by this section vested in the Trial Board.

It is argued that the International President, Mr. Tracy, had concurrent jurisdiction under article 4 to conduct the trial, but a careful consideration of the entire constitution will force one to the conclusion that he had no such jurisdiction. His powers are defined in article 4. Among them he may (section 3 (2) ) "decide all questions of law, disputes * * * however arising * * *" and in section 3 (7) he is granted the power to "suspend the cards and membership of any member who, in his judgment, is working against the welfare of the I. B. E. W. in the interests of any group or

organization detrimental to the I. B. E. W. — or for creating dissension among members or among L. U.'s — or who interferes with or tries to prevent the carrying out of decisions * * *".

It is obvious from reading article 4, that there was no power conferred upon Mr. Tracy to try and expel Bridgeman. He acted without jurisdiction, and necessarily his decision was void. The union will not be permitted to plead in bar of the second action its illegal act in attempting to expel Bridgeman.

Bridgeman was excused from exhausting his remedies within the union.

Nothing we have said is intended as a departure from the general rule that a member of such organizations must exhaust his remedies which are afforded by the constitution or by-laws of the order before he seeks relief in a court of law, unless there is some good excuse for not so doing. Where the constitution and by-laws provide a tribunal to hear and determine grievances of members, they must, as a condition precedent, proceed before such tribunal before they are permitted to resort to court action. This was the holding of this court in *Campbell* v. *Brotherhood of Locomotive Firemen, etc.*, 165 Va. 8, 181 S. E. 444. There the member did exhaust his remedies within the order before he applied to the court for redress.

We are of opinion that the judgment of the trial court should be affirmed.

*Affirmed.*