ANACLETO MILLÁN SOTO, Plaintiff and Appellee, *v.* CARIBE MOTORS CORPORATION, Defendant and Appellant.

No. 12570. Decided September 19, 1961.

476

*Córdova & González* and *Robert E. Schneider, Jr.,* for defendant-appellant. *Carmelo Avila Medina* and *Guillermo Díaz Díaz* for plaintiff-appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, and Mr. Justice Serrano Geyls and Mr. Justice Rigau.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Anacleto Millán, a fisherman and resident of the place known as Parcelas, of Ceiba, P. R., in consonance with the spirit of our times, decided to expand his modest economic activity and purchased a used truck. "The fill came around that time," Anacleto changed his mind, and wanted to trade his truck for a new and larger one. (Tr. Ev. of plaintiff, 18.) In speaking of the "fill," plaintiff Anacleto Millán means the business of transporting earth for fill to Roosevelt Roads Base. It is the purchase of this truck that gives rise to this action.

In the latter part of May 1956, the plaintiff called on the branch of Caribe Motors Corporation (defendant herein) in Fajardo and stated that he wanted to buy a Chevrolet truck, 1956 model. (Tr. Ev. of defendant, 16, 25.) At that time the defendant did not have a Chevrolet truck, but it had several GMC trucks in Río Piedras. Millán agreed to go to Río Piedras with a selling agent of the defendant to take a look at those trucks, and after doing so he purchased one of them.

There is discrepancy between the vendee and the vendor as to the price and other particulars, but, in synthesis, the transaction was carried out on the following basis. Millán paid $300 in cash and traded in his used truck. The balance would be paid in monthly instalments in accordance with an alleged conditional sales contract.

Let us examine briefly the chronology of the facts: Millán purchased the truck on May 28, 1956. Because of mechanical defects, he returned it to the vendor in August of that year. On the basis of default payments corresponding to September, October, and November of 1956, the vendor, which had the truck in its possession, filed an action for repossession on December 7, 1956. The hearing for repossession was held in the District Court on January 8, 1957, at which Millán did not appear, and on that same day the District Court entered an Order of Restitution. Two days later, while the Order of Restitution was not yet final, on January 10, 1957, Millán filed a complaint in the Superior Court against Caribe Motors Corporation praying for the rescission of the contract and the awarding of damages. The case having been heard, the Superior Court sustained the complaint and the defendant-appellant appealed to this Court. Let us now proceed in greater detail.

In his complaint before the Superior Court, Millán alleged that he purchased from the defendant a dump truck, 1956 model, for $6,675.94; that he signed the conditional sales

contract in blank "in the assurance... that the blanks would be filled out... as had been agreed upon verbally between the vendor and the vendee"; that the defendant did not give him copy of the conditional sales contract, except that the first time when it gave him a copy it was as part of the repossession proceeding; that the truck which was delivered to him was a 1955 instead of a 1956 model; that the said truck was useless to the plaintiff because it was in poor mechanical condition; he alleged other inaccuracies of the contract; that the defendant committed fraud and deceit in the said contract; that, because of the uselessness of the truck, the plaintiff failed to receive income in the sum of $3,000; that he returned the truck to the defendant, and that it had been in the latter's possession for three months prior to the filing of the complaint (the complaint is dated January 10, 1957). The plaintiff prayed the court to decree the rescission of the contract, to order the defendant to return to the plaintiff the sum of $2,000 which he paid to the defendant (a truck valued at $1,700 and $300 in cash), and to order the defendant to pay $3,000 to the plaintiff as income which he failed to receive by reason of the nonuse of the truck, and $500 for expenses, costs, and attorney's fees.

Defendant filed a Motion to Dismiss alleging that the plaintiff sought to attack the validity of the conditional sales contract while the action for repossession brought by the defendant was still pending before the District Court, and that the plaintiff could allege any defense against the defendant within the repossession proceeding. The Superior Court denied the said motion. The defendant then answered denying the essential allegations of the complaint and alleging as special defense that the judgment rendered by the District Court in the repossession proceeding was already final, conclusive, and unappealable. The case was heard on the merits in the Superior Court with the aforesaid result.

It is well, for the purpose of passing later upon the case, to point out at this time the peculiarities of the sale under consideration:

1. The conditional sales contract was signed in blank in open violation of the Conditional Sales Act, which provides that "Every conditional sale contract shall be executed in writing, and shall not be signed until *after* it contains everything agreed upon by the parties," and adds in the same section that "No conditional sale contract shall be registrable *or in any way valid* which does not contain the requirements herein established and which does not bear evidence, upon the vendee's signature, that a copy thereof *has been delivered to him.*" (Italics ours.) 10 L.P.R.A. § 32, Supp. The said section also provides that in every conditional sales contract there shall be set forth, among other requirements, the following items: the price, the down payment, the balance due, insurance charges, financing expenses and any other expenses, and amount and number of instalments payable. In case of nonperformance on the part of the debtor, no item may be claimed which is not specified in the contract. Millán was requested to sign the contract in blank and, by way of explanation, the vendor said, "This must be filled out in San Juan, where they are going to compute the figures; you know which ones they are." (Tr. Ev. of plaintiff, 6.) There is controversy as to those figures.

2. Copy of the contract was not delivered to the vendee, also in violation of the law, until more than six months had elapsed since the sale was made, when Millán had already returned the truck and when the defendant found it necessary to do so for the purpose of filing the action for repossession.

3. Plaintiff, who knew nothing about trucks, not even how to operate them (another person drove his truck), and could not distinguish between a 1955 and a 1956 truck (tr. ev. of plaintiff, 22), was under the impression that he was buying a 1956 truck, but received a 1955 truck. The vendor

denies, not very convincingly, that it deceived the vendee (tr. ev. of defendant, 26), but the vendee maintains that it did. The trial court believed plaintiff's statement and we find no ground for disturbing such finding. It was the owner of a garage in Ceiba, where Millán used to purchase gasoline, who informed the plaintiff that the truck was not a 1956 model as he thought. In the conditional sales contract, copy of which was not delivered to the vendee, it appears that the truck was a 1955 model.

4. There is no doubt that the sale was effected on May 28, 1956.[1] Yet, the contract is dated August 17 of that year. There is also discrepancy between the plaintiff and the defendant as to the town where the contract was signed and as to the price and other items therein, but we need not take them up in detail. (Tr. Ev. of plaintiff, 3–5.)

In sustaining the complaint, the Superior Court made the following findings of fact: The price of the truck was $6,550.94; Millán made a down payment consisting of $300 in cash and a truck valued at $2,200, the balance to be paid in monthly instalments; the vendee signed the contract in blank; it was signed in Fajardo; copy was not delivered to the vendee until the vendor brought the repossession proceeding; the defects of the truck consisted of broken block-cover bolts (screws which hold the wheels in place), breakage in the bearings, the radiator, and the block cover; as a result of those defects it was necessary to repair the truck on several occasions; at one time the defendant held possession of the vehicle without the plaintiff being able to use it because it was necessary to send to Miami for the block cover; the plaintiff thought he had bought a 1956 truck, but received a 1955 one; the defendant altered the amounts of the contract when filling

---

[1] The down-payment receipt (Exhibit 5 of plaintiff, reads: "May 28, 1956. Received from Anacleto Millán Three Hundred Dollars as down payment on GMC Truck $300 P. Laureano." Pablo Laureano was defendant's selling agent who sold the truck to Millán (tr. ev. of defendant, 24).

out the blanks; the truck which was delivered to the plaintiff was found to be defective; for that reason the plaintiff returned the truck; when the repossession proceeding was brought the truck was already in the defendant's possession; the plaintiff used the truck to transport fill to Roosevelt Roads Base; the defendant held possession of the truck for over four months; and if the plaintiff had been able to use the truck during all that time, he would have received an income of $30 a day during approximately 120 days.

As conclusion of law, the Superior Court determined that the defendant, through its Fajardo branch and because of its knowledge in that line, deceived the plaintiff, who knows nothing about that line, in selling to him an old-model truck which was found to be greatly defective. It also concluded that the defendant, as vendor, was responsible for the defects of the truck and the damages caused to the plaintiff.

The trial court ordered the defendant to pay to the plaintiff the sum of $2,500, which "it shall pay to the plaintiff in the form of a truck valued at $2,200 and in addition $300 in cash," and further ordered the defendant to pay $3,600 which the plaintiff failed to receive from his business, the costs, and $300 for attorney's fees. The defendant-appellant alleges that the trial court erred:

1. In depriving "the defendant of its property without due process of law and denying the equal protection of the laws of Puerto Rico by not giving conclusive effect to a final judicial decree between the same parties.

2. "In concluding, as a matter of law, that the defendant knowingly deceived the plaintiff in selling to him an old-model truck, which was found to be greatly defective in its mechanical functions.

3. "In ruling that the redhibitory action brought by the plaintiff had not prescribed.

4. "In concluding, as a question of law, that the defendant is responsible for the damages caused to the plaintiff.

5. "In ordering the defendant to deliver to the plaintiff a truck valued at $2,200.

6. "In assessing the amount of damages.

7. "In its weighing of the evidence."

We have before us a situation which, considered on its merits and in the light of the evidence presented and the conclusions reached by the trial court, warrants consideration at the bottom. However, the defendant alleges a defense of a procedural nature—the allegation of res judicata—which we can not overlook. That allegation is substantially the question raised in the first error. Since our decision is in favor of the plaintiff, we will set forth our conclusions on the merits of the case. We shall consider forthwith the errors assigned.

■ The conditional sales contract was executed in such flagrant violation of the Conditional Sales Act that it is at least voidable. Section 2 of the Conditional Sales Act, 10 L.P.R.A. § 32, Supp.; § 4 of the Civil Code, 31 L.P.R.A. § 4; Sánchez v. Coll, 69 P.R.R. 863, 865 (1949). In addition to the violations of the express letter of the Conditional Sales Act, there was sufficient deceit to vitiate the consent given by the vendee and thus render the contract voidable. Section 1252 of the Civil Code, 31 L.P.R.A. § 3511.

Although it may be argued in strict doctrine that the contract is void (because it was executed in violation of the express provisions of law based on reasons of public policy), we are inclined to favor the theory of voidability because we take into consideration the practical convenience of conditional vendors and vendees and of the development of the commerce in general.

We are conscious of the great volume of the conditional sales business in Puerto Rico. Under that system are sold, among other articles, automobiles and trucks, refrigerators, stoves, television sets, washing machines, sewing machines, radios, water heaters, agricultural implements, and home

484

.furniture and appliances. Thousands of persons are in some way connected with the activity of selling those products, and the conditional vendees are even more. It is estimated that the conditional sales in the country add up to some $100,000,000 annually.[2] It is possible that at present there are in this country many conditional sales contracts in force which have some of the defects present in the contract in the instant case. It is also probable that in many of those cases the vendors as well as the vendees are satisfied with the sale, and that those who have reasons and the right to raise the question of nullity do not wish to do so, but, on the contrary, they wish to ratify such contracts or have already ratified them. We are not going to impose, for doctrinal reasons, to those thousands of persons an absolute nullity which they have not requested and which would do them wrong rather than good. That is why we elect the way of the relative nullity or voidability.

■ As is known, a void act does not produce any of the juridical effects sought; a voidable act produces them as long as it is not voided. A void act is incurable for reasons of public policy, while a voidable act may generally be ratified or cured by whomever may allege its vice or defect. The relative nullity or voidability operates in favor of those persons who have committed an error or against whom violence, intimidation, or deceit has been used. The best way of rendering this protection effective is not by voiding the act, because such remedy could exceed its objective, but by subordinating its maintenance to the will of the interested party. If the latter finds that the contract is advantageous, he may ratify it, otherwise he may request its annulment. 3 Castán, *Derecho Civil Español* 437–46 (8th ed. 1954); 2–1 Puig Brutau, *Fundamentos de Derecho Civil* 322–32; Guaroa Ve-

[2] *Report on the Conditional Sales System in P. R.* submitted to the Committee on Commerce and Industry of the House of Representatives of Puerto Rico by the Office of Legislative Services, May 1961, p. 31.

lázquez, *Obligaciones y Contratos*, U.P.R. mimeographed pamphlet, pp. 113–16 (1939); *Zayas* v. *Orraca*, 80 P.R.R. 327, 339 (1957).

■ ■ In view of the situation of fact and of law stated above, the defendant alleges as principal defense the following: The Superior Court was confronted with a judgment of the District Court which was final, conclusive, and unappealable rendered in a proceeding for repossession to which it should have given conclusive effect and should have dismissed Millán's complaint.[3] The latter's defenses should have been raised by him in that proceeding and he could not invoke them in the action in the Superior Court. In support of its position, the defendant cites the cases of *Mattei & Co., Inc.* v. *Maldonado*, 70 P.R.R. 443 (1949), and *Universal Credit* v. *Super. Court; Gatell, Int.*, 77 P.R.R. 543 (1954).

In *Mattei* we said that the decisions are conflicting as to whether in an action of replevin brought by the conditional vendor, the vendee may raise the defense of latent defects in the chattel sold or of breach of warranty on the part of the vendor, and stated that the "better practice" should be to determine within the very action for recovery of possession such claims or rights, rather than to confine itself to the single fact of whether or not there has been noncompliance with the contract of conditional sale by the purchaser and, therefore, whether the restitution sought lies. In *Universal* we did not expand nor restrict what we said in *Mattei*: we believed then, as we do now, that the better practice is that already stated, but the situation of facts in *Universal* was different and we distinguished that case from that of *Mattei*. However, the defendant herein evidently believes that in

---

[3] When Millán filed the complaint in the Superior Court, the Order of Restitution of the District Court was not yet final and, on the contrary, it was appealable because Millán filed the complaint two days after the Order of Restitution had been entered. Rule 3 of the Rules of Appeals from the District Court to the Superior Court, 4 L.P.R.A., App. III. *Cf. Chase National Bank* v. *Colón*, 56 P.R.R. 281 (1940).

saying "better practice" we said "only practice." To assume such a thing is error. There may be situations, such as that in the instant case, which would warrant departure from that rule.

■ ■ The order of restitution in the repossession proceeding did not constitute res judicata against Millán's complaint in the Superior Court because they are two different causes of action. The first was the conditional vendor's cause of action based on the vendee's nonpayment, while the second was the vendee's cause of action against the vendor based on deceit and nullity of the contract. In accordance with what was said in the case of Mattei, *supra*, the better practice would have been to litigate everything within the repossession proceeding, but in not doing so plaintiff Millán was not left defenseless and could bring the action for nullity and damages, as he did. It should be noted that the Civil Code (§ 1204, 31 L.P.R.A. § 3343) requires that "In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be *the most perfect identity* between the things, causes, and persons of the litigants, and their capacity as such." (Italics ours.) *Silva* v. *John Doe*, 75 P.R.R. 198, 202 (1953). In the case at bar that perfect identity is lacking in the causes of action of both proceedings in order that the judgment rendered in the first may be valid as res judicata in the second.

■ The doctrine of collateral estoppel by judgment does not apply either because, under that doctrine, the former judgment is conclusive only as to those matters which were actually raised and which were really or necessarily litigated and adjudicated, but it is not conclusive as to those matters which, though involved in the case, were not litigated and adjudicated in the former action. 2 Freeman, Law of Judgments § § 677–79 (5th ed.) ; *Tartak* v. *District Court and Cruz, Int.*, 74 P.R.R. 805, 814 (1953), and authorities therein

cited; *Aetna Life Ins. Co.* v. *Martin*, 108 F.2d 824, 827 (1940) ; *Cunningham* v. *Oklahoma City*, 110 P.2d 1102, 1104 (1941) ; *Lorber* v. *Vista Irr. Dist.*, 127 F.2d 628, 634 (1942) ; *International Brotherhood of Electrical Workers* v. *Bridgeman*, 19 S.E.2d 667, 670 (1942).

■ It has been said that the best test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions. If different evidence is required to sustain the different actions, then the causes of action are different and the former judgment is no bar to litigate the other cause of action. Freeman, *op. cit.* § 687. In the case at bar it is clear that the evidence required to establish the default in the vendee's monthly payments is not the same which would have been required to sustain the action of nullity brought by the vendee based on defects in the contract and deceit.

■ ■ This case was litigated while the Rules of Civil Procedure of 1943 and supplemental provisions thereto were in force. However, Rule 13(a) of 1943, dealing with compulsory counterclaims, does not apply by virtue of Rule 81, also of 1943, which did not include the repossession proceeding among the actions and proceedings to which such rules are applicable. Moreover, because of the special and summary nature of that proceeding the provisions of § 112 of the Code of Civil Procedure, 32 L.P.R.A. § 593, on counterclaims (repealed by the Rules of Civil Procedure of 1958), can not be applied thereto. The repossession proceeding, as has been said, is a special proceeding instituted by filing a simple affidavit and not by virtue of an ordinary complaint. Because of its summary nature, it is not subject to the technicalities or delays which generally occur in ordinary civil suits. *Universal Credit Corporation* v. *Super. Court; Gatell, Int.*, 77 P.R.R. 543, 550 (1954). In view of the aforesaid nature of this proceeding, we can not inexorably require that

other causes of action foreign to the repossession be litigated therein. The circumstances of a case such as this in which, in addition to the formal fatal defects in the contract—in violation of the specific law based on reasons of public policy—there also exists the element of deceit, warrant departure, by exception, from the general rule in the *Mattei* case, *supra*.

Section 421 of the Code of Civil Procedure, 32 L.P.R.A. § 1793, dealing with conclusive effect of former judgment, would not be applicable either, since it makes conclusive the judgments or orders "in respect to the matter directly adjudged," and in the case at bar it can not be maintained that in the repossession proceeding the District Court passed upon the action of nullity based on deceit and defects of the contract and which was litigated in the Superior Court.

It is proper to point out that we are conscious of the usefulness and importance of the rule of res judicata and of the doctrine of collateral estoppel by judgment. Certainly, there is an interest, individual as well as social, in putting an end to litigation. Yet, we can not defeat justice in the name of rules which were adopted for the purpose of facilitating its administration. We must reconcile the general maxims with the facts of the case. As José Castán Tobeñas, Chief Justice of the Supreme Court of Spain, correctly points out in his excellent book *Teoría de la Aplicación e Investigación del Derecho*,[4] there are a number of doctrinal rules or legal maxims which are frequently invoked but which, although they have "the appearance of general and absolute principles, there is not a single one which is not false as a general maxim."[5] Castán states that the modern textwriters condemn the abuse of such maxims. Felipe Sánchez Román, on his part, had already written that "The speculations of the commentators and the use of the schools of law have

---

[4] Instituto Editorial Reus, Madrid, 1947.

[5] Castán, *op. cit.* at 253–58.

sanctioned a set of rules which, though they reveal great ingenuity and offer skillful resources for academic and forensic debates, without failing to rely in some instances on a basis of undeniable truth, are conflicting with each other, are devoid of the earmark of unity which characterizes every doctrine properly scientific and provide elements for the defense of all kinds of actions." [6]

As stated in *Pérez* v. *Bauzá, ante*, p. 213, "the courts have refused to apply rigidly the defense of res judicata if in so doing it defeats the ends of justice, especially if reasons of public policy are involved," and "are inclined to a solution which would guarantee proper justice instead of rigidly applying a fiction of law which rests fundamentally upon a principle of convenience and procedural order." [7] (Citations omitted.) As pointed out by Moore, modern procedure tends to encourage, if not to require, the courts to decide cases on the merits. [8]

In view of the foregoing, we conclude that errors numbers 1 and 2 were not committed. Neither was the third error committed. As pointed out by the defendant at page 5 of its brief, the action is actually one of nullity of contract. Such action shall last four years. Section 1253 of the Civil Code, 31 L.P.R.A. § 3512; *Zayas* v. *Orraca, supra.* The contract was executed on May 28, 1956, and the action was brought on January 10, 1957. It makes no difference how the

---

[6] I *Estudios de Derecho Civil* 25 (2d ed.).

[7] Although the contents of public policy of Act No. 13 of April 12, 1955 (Sess. Laws, p. 50), which amended § 2 of the Conditional Sales Act, 10 L.P.R.A. § 32, Supp., appear from the face thereof, see on the matter the Report of the Committee on Industry and Commerce of the House of Representatives on H.B. 1124 of February 8, 1954 and the debate on that bill, *Journal of Proceedings of the Legislative Assembly* (House), No. 93 of May 17, 1954, pp. 1844–47; *Journal of Proceedings* (Senate), No. 53 of March 23, 1955, p. 694; and *Journal of Proceedings* (Senate), No. 54 of March 24, 1955, pp. 710, 711, and 715.

[8] 1A Moore, Federal Practice 5042, Part 5, par. 504 (2d ed.). See I Barron and Holtzoff, Federal Practice and Procedure 29, § 7 (1960, revised).

plaintiff labelled it. "No party has a vested interest in the grammatical and procedural errors of his adversary." *Serra* v. *Transportation Authority*, 68 P.R.R. 581, 585 (1948). Errors 4 and 7 were not committed. But error number 5 was committed. Instead of the defendant being under the duty to deliver to plaintiff a truck valued at $2,200, it should instead deliver to him the sum of $2,200 for that account. The sale of a new GMC truck was made in May 1956. It was then that the plaintiff turned over to the defendant a used truck valued at $2,200 as part of the down payment on the new truck. The judgment of the Superior Court was rendered in January 1958. The defendant is engaged in the sale of vehicles, and it is not to be expected that it held the used truck in its possession for two years without doing any business with it. The nullity of an obligation having been declared, where there is no possibility of specific return of the thing, the same may be substituted, and in a case such as the one at bar in which the truck had been valued at a sum certain, the truck may be substituted for the value determined by the parties. *Cf. Forteza & Co. et al.* v. *Colón et al.*, 35 P.R.R. 269, 271 (1926), and § 1259 of the Civil Code, 31 L.P.R.A. § 3518.

As to error number 6, although it is true that damages were awarded for the income which the plaintiff failed to receive for the four months during which the defendant held the truck in its possession, without excluding Sundays and holidays, yet no damages were awarded for the income which the plaintiff failed to receive for the time during which the latter held the vehicle in his possession but was unable to use it because it was defective. We believe that the trial court offset one thing with the other, and we see no reason for disturbing that decision.

The judgment rendered by the Superior Court, Humacao Part, will be affirmed as modified with respect to the assignment of error number 5.